IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER J. KELLEY | ) | |
| Petitioner, | ) ) ) | |
| v. | ) | NO. 3:18-cv-00908 |
| UNITED STATES OF AMERICA, | ) ) ) | JUDGE RICHARDSON |
| Respondent | ) ) | |

## **MEMORANDUM OPINION**

Petitioner, Christopher J. Kelley, commenced this action by filing a Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence (Doc. No. 1, "Petition"). Via the Petition, he seeks to overturn his conviction and 97-month sentence in his underlying criminal case (No. 3:16-cr-00133) on one count of possession of a firearm (a Glock Model 22 .40 caliber pistol) by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) & 924. In the Petition, in each of his two separate claims, he asserts that he was provided ineffective assistance by the attorney (Richard Tennent, "prior counsel") who represented Petitioner in his underlying criminal case. In the Petition, he also claims that his base offense level was set too high, because it was based on his having two prior convictions for "crimes of violence" for purposes of U.S.S.G. § 2K2.1(a)(1)— which sets a base offense level of 26 in certain cases for defendants having two prior "crimes of violence"—that in fact are not "crimes of violence."

The Government filed a response in opposition to the Petition (Doc. No. 26), as well as a declaration of Petitioner's prior counsel (Doc. No. 26-1). Petitioner subsequently filed what he captioned in pertinent part as a "Supplemental Brief" (Doc. No. 27), which served to assert the below-referenced claim based on *United States v. Rehaif*, 139 S. Ct. 2191 (2019). The Court will

treat this document as amending his Petition, so that the Petition as amended comprises the two claims for ineffective assistance of counsel, the claim that his guideline range was calculated incorrectly, and the *Rehaif* claim.

Notably, in terms of relief requested, Petitioner asks the Court "[t]o vacate sentence [or] in the alternative, grant an evidentiary hearing." (Doc. No. 1 at 12). The Court notes, however, that his claims of ineffective assistance of counsel, and his *Rehaif* claim, challenge the underpinning of the conviction and would (if they were valid) naturally call for not just resentencing, but also vacatur of his conviction as well. The Court keeps this in mind in assessing Petitioner's claims.

For the reasons stated herein, the Petition, as amended, will be DENIED, and this action will be DISMISSED.

## BACKGROUND[1]

On June 15, 2016, a two-count indictment was filed against Petitioner and a co-defendant. Petitioner was charged (by himself) only in Count One, which alleged the above-described violation of Title 18, United States Code, Section 922(g)(1). (R. 13).

On May 16, 2017, Petitioner pled guilty pursuant to a plea agreement under Fed. R. Crim P. 11(c)(1)(C), which set forth a joint sentencing recommendation—binding on the district court if accepted by the district court—of an "effective" sentence of 100 months' imprisonment (and a three-year term of supervised release). (R. 46 at 8). The plea agreement also contemplated that by the time of sentencing, Petitioner would have accrued two months' credit to be deducted from the

---

[1] References below to "R." are to the docket numbers in the underlying criminal case, No. 3:16-cr-00133, over which the undersigned did not preside at any point.

100 months, such that the sentence to be imposed actually would be 98 months. (*Id.* at n.1).[2] The plea agreement also set forth the factual basis for the plea of guilty, which read as follows:

> On May 10, 2016, Metropolitan Nashville Police Department (MNPD) detectives were in the area of Fallbrook Apartments, located at 345 Dellway Villa Road, Nashville, Tennessee, looking for a suspect who had just fled from officers on foot. While searching a wooded area for this suspect, MNPD detectives began hearing gunfire near building "G." Christopher Jermaine Kelley, the defendant, was observed by an MNPD detective firing a pistol in an exchange of gunfire with an unknown individual or individuals near the "G" building. The detective observed that he [sic] pistol in Kelley's hand had an extended magazine.
>
> Once the gunfire stopped, Kelley and another black male, later identified as David Antwan Frazier, ran to a red 2014 Chevy Impala. MNPD detectives ordered Kelley and Frazier to stop. However, Kelley and Frazier jumped inside the Impala. Kelley, the driver, then put the car in reverse and began to back away. Kelley and Frazier, who was the only passenger, then jumped out of the moving Impala and ran toward the woods. After a brief foot pursuit, both Kelley and Frazier were taken into custody.
>
> In the aforementioned Impala, MNPD detectives observed a Glock, Model 22, .40 caliber pistol with an extended magazine on the driver's seat that was the handgun Kelley was observed possessing. The Glock pistol was loaded and had an obvious "double-feed" malfunction, consistent with jamming while being fired. A records check of the Glock pistol revealed that it had been reported stolen out of Sumner County in 2007. Another pistol was also recovered from the Impala **to** which Kelly **denies possession, control, or ownership at any time.**
>
> A criminal history check of Kelley revealed that at the time of this offense, he had multiple felony convictions in Tennessee, including the following:
> • Attempted Second Degree Murder in case number 270107 in the Criminal Court of Hamilton County, with the disposition date of March 23, 2010, for which he received a sentence of eight (8) years incarceration.
> • Aggravated Assault in case number 250985 in the Criminal Court of Hamilton County, with the disposition date of August 24, 2006, for which he received a sentence of four (4) years incarceration.
> • Robbery in case number 270658 in the Criminal Court of Hamilton County, with the disposition date of March 23, 2010, for which he received a sentence of three (3) years incarceration.

---

[2] It appears that the parties intended the sentence to be 100 months, minus credit for all time served from the time Petitioner was to be transferred to federal custody from state custody (forecast in the plea agreement to be July 11, 2017) until the time of sentencing. (R. 46 at 8 n.1).

> A Bureau of Alcohol, Tobacco, Firearms and Explosives Interstate Nexus Expert, has determined the Glock pistol is a firearm, as defined by 18 U.S.C. § 921(a)(3), and that the firearm was not manufactured in the State of Tennessee; and, therefore, at some point in time, traveled in and affected interstate or foreign commerce.

(R. 46 at 3-5) (emphasis added).[3] Notably, the original plea agreement as executed and submitted to the Court contained handwritten additions (highlighted above in bold) inserted around where certain original language had been typed before, quite plainly, being rejected by Petitioner as inaccurate. Where the old language had been crossed out and new language had been inserted (obviously at Petitioner's request), the initials of Petitioner and counsel for both sides appear, thus tending to show that considerable attention was paid by all to the language in the factual basis.

Moreover, this language was read, virtually verbatim, by the prosecutor (Mr. Lee) at the plea hearing on May 16, 2017. (R. 115 at 13-15). Thereafter, Petitioner confirmed the accuracy of what Mr. Lee had read:

> THE COURT: Mr. Kelley, was everything that Mr. Lee just read into the record true and accurate?
>
> MR. KELLEY: Yes, sir.

(*Id.* at 15).

At sentencing on September 27, 2017, the Court accepted the parties' sentencing recommendation and, accordingly sentenced Defendant to 97 months, having given Defendant three months' credit instead of two as originally contemplated.[4]

Petitioner did not appeal his conviction or sentence.

---

[3] Pertinently, as discussed below, the conviction for aggravated assault was for *reckless* aggravated assault in particular, as made clear in paragraph 37 of the Presentence Investigation Report, and prior counsel was well aware of this fact and its importance. (Doc. No. 26-1 at 3).

[4] This appears to be because the late September sentencing was approximately a month later than the "August/September" timeframe the parties had anticipated. (R. 46 at 8 n.1).

LEGAL STANDARD

To prevail on a § 2255 motion, a petitioner must demonstrate that the court imposed the sentence in violation of the Constitution, the court was without jurisdiction to impose such a sentence, the sentence was more than the maximum sentence authorized by law, or the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255 (2018). Section 2255 requires "a hearing on such allegations unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (internal quotation marks omitted); *Ray v. United States*, 721 F.3d 758, 760-61 (6th Cir. 2013); *see also Dagdag v. United States*, No. 3:16-cv-364-TAV, 2019 WL 2330274, at *1 n.1 (E.D. Tenn. May 31, 2019) (internal quotation marks omitted) (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) ("[W]here the record conclusively shows that the petitioner is entitled to no relief, a hearing is not required.").

A petitioner is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle the petitioner to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008). Even when material facts are in dispute, an evidentiary hearing is unnecessary if the petitioner is conclusively entitled to no relief. *See Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008). "Stated another way, the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.; accord Arredondo*, 178 F.3d at 782. The decision whether to hold an evidentiary hearing is one committed to the sound discretion of the district court. *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) ("A decision not to hold an evidentiary hearing on a motion for relief under 28 U.S.C. § 2255 is reviewed for abuse of discretion.").

The applicable rules address what the district court may (and must) consider in determining whether to order an evidentiary hearing, where (as here) the motion is not dismissed under Rule 4(b) based on the district court's initial review:

> If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

Rule 8(a), Rules Governing Section 2255 Proceedings. As suggested, Rule 7 permits expansion of the record with additional materials relevant to the motion, such as letters predating the filing of the motion, documents, exhibits, answers under oath to interrogatories, and affidavits. Rule 7(b), Rules Governing Section 2255 Proceedings. As noted above, in this case the record has been expanded to include a declaration from prior counsel.

## DISCUSSION

The Court below addresses each of the claims in the Petition as amended. None has merit, and none requires an evidentiary hearing.

### I. ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

In his first and second claims, Petitioner asserts that in his underlying criminal case, he was denied effective assistance of counsel in violation of the Sixth Amendment. A defendant has a Sixth Amendment right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "It has long been settled that a guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998) (internal quotation marks omitted). In *Strickland*, the Supreme Court put forth a test to evaluate claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

> defense. This requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes
> both showings, it cannot be said that the conviction . . . resulted from a break down
> in the adversary process that rendered the result unreliable.

*Strickland*, 466 U.S. at 687. Under the first prong of the *Strickland* test, a petitioner must establish that his attorney's representation fell below an objective standard of reasonableness. *Id.* at 688. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . . " *Id.* at 689. Strategic choices made by counsel after thorough investigation are virtually unchallengeable. *Id.* at 690. Petitioner bears the burden of proving by a preponderance of the evidence that counsel was deficient. *See Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citing *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006)).

In "Ground One" and "Ground Two," Petitioner claims that prior counsel's performance was deficient (Doc. No. 1 at 4, 5). Each ground which will be addressed in sequence.

In connection with Ground One, Petitioner claims that prior counsel was ineffective during "the plea stage" because prior counsel allegedly: (1) failed to conduct adequate pretrial investigation, in particular investigation "on the officers who allegedly witnessed him in possession of the firearm" (Doc. No. 1 at 15);[5] and (2) improperly "push[ed]" Petitioner to plead guilty rather than go to trial, essentially by "adamantly us[ing]" the prospect of sentencing under the Armed Career Criminal Act ("ACCA")—which carries a sentence of between 15 years and life imprisonment—to persuade Petitioner to plead guilty to avoid possible sentencing under the ACCA (*id.* at 15-17).

---

[5] The Government did not address this complaint, apparently for some reason not recognizing that it was part of Petitioner's grievance about prior counsel's performance during what Petitioner calls "the plea stage," by which he means the period up to and including his entering a guilty plea.

The Court will resolve this set of of complaints by addressing in turn each of prior counsel's three alleged failings.

As for the first complaint, that prior counsel failed to conduct adequate pretrial investigation, the Court rejects it without need of an evidentiary hearing because it cannot be accepted as true, being a mere conclusion unsupported by statements of fact. The closest Petitioner gets to alluding to any supporting facts is when he refers in passing to asking his prior counsel to bring him a videotape of the alleged incident, *i.e.*, "the videotape of me 'allegedly' running from the officers," which Petitioner wanted because he "was concerned about proving my innocence that I never had any firearm, and I explained to my lawyer that the officers had planted the gun." (Doc. No. 1 at 31). At best, this is an attempt to claim that prior counsel somehow should have done more with (and followed up more on) the videotape to establish that Petitioner was innocent and had been framed.[6] But with this generous interpretation of Petitioner's words here, he fails to state a claim, because he offers no explanation of the steps prior counsel should have taken, why he should have known to take them, and what they would (or even might) have accomplished.

And in fact, it is entirely clear that *unless Petitioner perjured himself at the plea hearing*, any such investigation would have accomplished nothing. As Petitioner himself admitted at the plea hearing, he was *not* framed and the gun was *not* planted; instead, the prosecutor got it right when he described how Petitioner was "firing a pistol in an exchange of gunfire with an unknown individual or individuals," using "a Glock, Model 22, .40 caliber pistol with an extended magazine [later found] on the driver's seat" in the Chevy Impala. (R. 46 at 3-5; R. 115 at 13-15). Failing to do an investigation to establish a non-existent frame job by police could not possibly have hurt

---

[6] Petitioner's claim cannot be that prior counsel was deficient for not obtaining the videotape, not analyzing the videotape, and not discussing the videotape with Petitioner; Petitioner makes clear that prior counsel did all of these things, as Petitioner describes prior counsel characterizing for Petitioner what the videotape shows. (Doc. No. 1 at 32).

Petitioner's defense, because there was nothing for such an investigation to reveal. Even assuming arguendo that Petitioner could satisfy step one of the *Strickland* analysis here (which he cannot do with his mere conclusory allegations), he would fail to satisfy step two because any investigative deficiencies did not prejudice Petitioner by depriving him of a fair trial with a reliable result. In short, Petitioner's claim of any inadequate pre-plea investigation, and especially any *prejudicial* lack of pretrial investigation, is wholly conclusory and belied by the record, and thus entirely without merit.

That leads to Petitioner's second complaint, that prior counsel improperly persuaded Petitioner to plead guilty by raising the specter of (greatly) increased sentencing under the ACCA if Petitioner were to go to trial. Petitioner[7] and his prior counsel both make clear in their respective declarations that prior counsel explained that sentencing under the ACCA would occur only if the Supreme Court's opinion in *United States v. Voisine*, 136 S. Ct. 2272 (2016) (holding that the crime of reckless domestic assault qualifies as a "misdemeanor crime of violence" for purposes of 18 U.S.C. § 922(g)(9)), decided 12 days after Petitioner was indicted, resulted in a change in Sixth Circuit case law that would bring Petitioner's sentencing within the ambit of the ACCA whereas previously it had not been. As prior counsel explains it, the issue was whether *Voisine* would cause the Sixth Circuit to change its view on whether the Tennessee crime of reckless aggravated assault constitutes a "violent felony" for purposes of the ACCA; if so, this almost surely would render Petitioner subject to sentencing under the ACCA based on his prior conviction for reckless aggravated assault (Doc. No. 26-1 at 3). [8]

---

[7] Petitioner's declaration is found at Doc. No. 1 at 31-32.

[8] Under the ACCA, a defendant convicted of a violation of 18 U.S.C. § 922(g) receives a mandatory minimum 15-year sentence (with a maximum of life imprisonment) if, prior to the violation, he or she had at least three previous convictions for either a "violent felony" or a "serious drug felony," committed on occasions different from one another.

Accordingly, as prior counsel explains it, he was very concerned about any such change in the law happening *before* Petitioner was sentenced. (*Id.* at 3-4, 6).[9] In other words, Petitioner had a substantial incentive to be sentenced based on then-current case law, before it potentially changed, rather than risk sentencing under case law as potentially changed in the future. And one way to achieve that would be to negotiate an agreed sentencing recommendation under Rule 11(c)(1)(C) based on then-current case law, before it changed. In that scenario, provided that the Court accepted such agreement (a substantial likelihood, experience shows), the Rule 11(c)(1)(C) agreement would serve to protect Petitioner from potential sentencing under the ACCA brought about by a subsequent change in case law based on *Voisine*.

And as it turned out, prior counsel was on to something. The law *was* about to change in a way that most likely would render Petitioner's prior conviction for reckless aggravated assault a (third) crime of violence for purposes of the ACCA. Less than two years after Petitioner pled guilty, in *Dillard v. United States*, 768 F. App'x 480 (6th Cir. 2019), a case involving reckless aggravated assault, the Sixth Circuit held that "[r]ecklessness [i]s [s]ufficient [u]nder the ACCA." *Id.* at 487. In summary, prior counsel was *pres*cient, not *defi*cient, in advising Petitioner based on the view that time could be running out on Petitioner's ability to be sentenced without application of the higher sentencing range of the ACCA.

---

The Court gleans that prior counsel (correctly) believed that Petitioner already had two prior qualifying convictions—two violent felonies in the Criminal Court of Hamilton County, one for Attempted Second Degree Murder in case number 270107, and the other for Robbery in case number 270658—and that the issue was whether his conviction for (reckless) aggravated assault would count as a third "violent felony" conviction.

[9] To the extent that the Court relies herein on prior counsel's representations, it has done so only after determining that those representations are credible, based on numerous factors: prior counsel's incentive not to expose himself to criminal liability for submitting knowingly false sworn statements; his underwhelming (if not entirely non-existent) motive to defend his actions by lying at the expense of his former client; the fact that his defense of his actions is measured and not hyperbolic; the fact that prior counsel quite patently understands what he is talking about, and the fact that such representations do not conflict with Petitioner's version of events.

The Court does not discern where Petitioner specifically claims that prior counsel's concerns were objectively unfounded or otherwise inappropriate, or that prior counsel's performance was deficient because he had these concerns. Petitioner certainly does not explain *why* or *how* such concerns were unfounded or reflective of deficient performance. And in fact they were no such thing. Rather than performing deficiently, prior counsel was acting objectively reasonably—even admirably—in spotting this issue and discussing it with Petitioner, and incorporating it into his strategic advice. There is no merit to any conclusory assertion that prior counsel was ineffective because he dissuaded Petitioner from going to trial based on (supposedly) unwarranted fears about a bad outcome resulting from a possible change in the law.

Petitioner also complains about the alleged pressure that prior counsel placed on him to plead guilty. But this complaint falls flat because it is completely belied by the record. Counsel's letter to Petitioner less than four weeks prior to his guilty plea shows *balanced advice* as to whether to plead guilty, not *pressure* to plead guilty. (Doc. No. 26-1 at 19). Moreover, in his plea agreement, Petitioner averred: "I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it." (R. 46 at 12). Petitioner signed this document, (*id.*), and swore to the Court he had read it and had no questions regarding it. (R. 115 at 6). As the Government notes, Petitioner also stated (under oath) both that he was satisfied with prior counsel's advice and service and had had all of his questions about the case answered by prior counsel, (*id.*), which would not be the case if Petitioner felt that prior counsel was dragging him to a guilty plea against his will and/or with lingering questions about the desirability of pleading guilty. Likewise, when asked whether "anyone has tried to force [him] to plead guilty by any mistreatment or pressure," Petitioner unequivocally answered in the negative. (*Id.* at 12). Immediately thereafter, Petitioner answered unequivocally in the affirmative

when asked whether he was "pleading guilty freely and voluntarily to Count One because [he is] guilty and it is [his] choice to plead guilty here today?" (*Id.*). Thus, the Court finds, without the need of an evidentiary hearing at which Petitioner perversely proposes to establish that he was untruthful to the Court at his plea hearing, that prior counsel's performance was not deficient in that it involved undue pressure to plead guilty.

In connection with Ground Two, Petitioner asserts that prior counsel was ineffective because he "allowed" Petitioner to plead guilty to knowingly violating Section 922(g)(1), even though one element of such knowing violation was missing. In particular, according to Petitioner, the Glock firearm at issue was not "in and affecting commerce" as required for conviction. This contention is frivolous. The record shows conclusively that a factual basis was established for the proposition that the firearm was "in and affecting commerce" inasmuch as it was manufactured outside the state of Tennessee. Further, the record establishes that Petitioner agreed with this proposition and knew that a factual basis had been presented to establish it. On this point, the Government writes:

> [T]he plea agreement and transcript of the plea hearing clearly establish that Kelley voluntarily pled guilty with a full understanding of the elements of the offense, and that the charged firearm was manufactured *outside* the state of Tennessee.
>
> A review of the plea agreement signed by Kelley reveals that in the factual basis contained at the end of paragraph 8, an interstate nexus expert concluded that the, "firearm was not manufactured in the State of Tennessee; and, therefore, at some point in time, traveled in and affected interstate or foreign commerce." ([R. 46 at 5], Plea Agreement).
>
> Furthermore, during the plea hearing, the factual basis was read in Court, and Kelley acknowledged that the firearm was manufactured *outside* of Tennessee:
>
> > **AUSA Lee:** A Bureau of Alcohol, Tobacco, Firearms and Explosives Interstate Nexus Expert has determined that the aforementioned Glock pistol is a firearm as defined by Title 18 U.S.C. Section 921(a)(3), and that the firearm was not manufactured

> in the state of Tennessee and therefore at some point in time traveled in and affected interstate or foreign commerce.
>
> **Court:** Mr. Kelley, was everything that Mr. Lee just read into the record true and accurate?
>
> **Kelley:** Yes, sir.

([R. 115 at 15], Plea Hearing Transcript).

> Kelley's argument rests on his position that the PSR states that the charged firearm *was* manufactured in Tennessee. Indeed, paragraph 8 of the PSR states the following: "An interstate nexus expert with the Bureau of Alcohol, Tobacco, Firearms, and Explosives determined that the firearm possessed by Kelley was manufactured in the state of Tennessee, thus affecting interstate or foreign commerce." In this instance, the U.S. Probation Officer who prepared the PSR acknowledges a typographical error; and the U.S. Probation Officer prepared a memorandum with that explanation for the difference between the wording in the PSR and the wording in the plea agreement regarding interstate commerce. (*See* [Doc. No. 26-2], memorandum from U.S. Probation Officer).

(Doc No. 26 at 7-8). The Government here has it exactly right. And it might have added that the Court cannot grant relief under Section 2255 based on a mere and obvious typographical error of an employee of the judicial branch (which is what a U.S. Probation Officer is), particularly one that is contradicted by everything else relevant in the record. The Court also might have noted that everyone at the plea hearing was fully aware that (based on the firearm at issue being manufactured outside Tennessee) the Government was specifically claiming that it could satisfy the element of "in and affecting commerce." (R. 115-116). It is not as if this element simply slipped through the cracks, was forgotten, and thus went unestablished. To the contrary, this element was clearly and adequately addressed.

The Court also notes in passing that there is no basis whatsoever to believe that the Austrian arms manufacturer at issue, Glock, manufactures firearms in Tennessee. To the contrary, it is well nigh judicially noticeable that Glock does no such thing, although the Court need not take judicial notice of this fact to reject Petitioner's claim.

To summarize, each of Petitioner's claims of ineffective assistance of counsel is without merit.

## II. ALLEGED ERROR IN APPLYING BASE OFFENSE LEVEL OF 26 PURSUANT TO U.S.S.G. § 2K2.1(a)(1)

Petitioner expressly did not waive his right to bring a Section 2255 motion based on ineffective assistance of counsel. And this Court will not construe his waiver of his right to bring a Section 2255 attack to apply to any claim that he was sentenced for something that was not actually a criminal offense; for this reason, the Court below addresses Petitioner's *Rehaif* claim without reference to its being waived. But *sentencing* is another matter. In his plea agreement, Petitioner expressly waived his right to appeal the sentence imposed (to the extent that, as in this case, the sentence was imposed based on a valid conviction):[10]

> Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence of 98 months in the custody of the Bureau of Prisons, followed by 3 years supervised release, as set forth in this agreement. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241.

(R. 46 at 10). At the plea hearing, the Court read Petitioner this language verbatim, and he said he had no questions about it. (R. 115 at 11). As noted above, Petitioner indicated in the plea agreement itself that he had read it, understood it, and agreed to its terms. Petitioner thus knowingly and voluntarily waived his right to challenge his sentence via this Section 2255 motion.[11]

---

[10] As suggested in the sentence immediately prior to the sentence that appended this footnote, the Court conditions Petitioner's waiver of the right to challenge his sentence upon Petitioner validly being convicted; in other words, to the extent that Petitioner would be able in this Section 2255 action to have his conviction overturned, his sentence naturally likewise would be overturned despite his waiver of the right to challenge his sentence. But as explained herein, Petitioner has not shown any basis to overturn his conviction. Thus, the question is whether Petitioner has waived his right to challenge the sentence he received for that (valid) conviction. And as noted herein, he expressly and validly waived such right.

[11] It is of no moment that the sentence imposed was 98 months rather than 97 months. The waiver applies anyway because: (1) the waiver of the right to appeal a 98-months sentence cannot reasonably be construed to allow

Alternatively, Petitioner's challenge to his sentence is without merit in any event. First, his base offense level was correctly determined. Petitioner was allocated a base offense level of 26 under U.S.S.G. § 2K2.1(a)(1) based on his having two felony convictions of either a crime of violence or a controlled substance offense; only two are required under U.S.S.G. § 2K2.1(a)(1). As the Government notes, paragraph 15 of the Presentence Investigation Report (PSR) set forth the two convictions that brought him within the scope of U.S.S.G. § 2K2.1(a)(1): a 2006 conviction for possession of marijuana for resale, and 2010 convictions for attempted second degree murder and robbery (which together count as a single conviction because sentence was imposed on them on the same day, as noted in the PSR).[12] This suffices to trigger application of U.S.S.G. § 2K2.1(a)(1), with its base offense level of 26. Petitioner takes pains to argue that his conviction for (reckless) aggravated assault does not count as a "crime of violence" for purposes of U.S.S.G. § 2K2.1(a)(1). This contention is irrelevant even if true, however, because (entirely and obviously contrary to Petitioner's claim) Petitioner's reckless aggravated assault conviction was *not* counted, and instead the conviction the possession of marijuana for resale conviction *was* counted. Even without the conviction for reckless aggravated assault, Petitioner has the required number of qualifying convictions—two—to have a base offense level of 26 under U.S.S.G. § 2K2.1(a)(1).

There is another alternative reason, not referenced by the Government, why Petitioner would not be entitled to resentencing based on an alleged improper calculation of his guidelines

---

an appeal of a 97-month sentence, which is of course more favorable to a defendant than is a 98-month sentence; (2) the 97-month sentence effectively *is* the 98-month sentence, albeit adjusted one month due to sentencing occurring roughly a month later than anticipated; and (3) the waiver of the right to challenge the sentence via a Section 2255 motion, unlike the waiver of the right to challenge the sentence via an appeal, is not limited in scope to sentences of 98 months.

[12] The PSR has not been unsealed in this case, and the very limited (though highly relevant) references herein to the PSR are not intended to have the effect of unsealing the PSR with respect to any information not specifically referenced herein.

had he not waived his right to seek resentencing. The parties' plea agreement under Fed. R. Crim. P. 11(c)(1)(C) provided, just before stating the parties' agreement to an offense level calculated primarily based on application of U.S.S.G. § 2K2.1(a)(6), that "the parties understand that the sentence agreed to herein is not dependent on these calculations." (R. 46 at 5). Copious authority from various federal appellate courts supports the notion that "a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement may be reviewed . . . only where that 'agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment.'" *United States v. Williams*, 811 F.3d 621, 624 (4th Cir. 2016) (quoting *Freeman v. United States,* 564 U.S. 522, 131 S. Ct. 2685, 2695 (2011)). This is because "a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement is generally based on the agreement and not the Guidelines." *Id.* (citing *Freeman*, 131 S. Ct. at 2695 (Sotomayor, J., concurring in the judgment)). That is the case here. As Petitioner's sentence was expressly based on his Rule 11(c)(1)(C) agreement and not on his guideline calculations, the alleged error in applying U.S.S.G. § 2K2.1(a)(1) in making those calculations is simply not grounds for relief.

### III. REHAIF-BASED ARGUMENT

In his Supplemental Brief, Petitioner takes one final shot at relief, claiming that his conviction must be set aside under *Rehaif*. In *Rehaif*, the Supreme Court held that a "knowing" violation of Section 922(g)—*i.e.,* a violation of a Section 922(g) that is subject to a maximum prison term of ten years pursuant to 18 U.S.C. § 924(a)(2) because it was done "knowingly"—requires the defendant to know that (s)he had the relevant status rendering possession of the firearm illegal when (s)he possessed the firearm. *See* 139 S. Ct. at 2200. Here, the relevant status is felony status, *i.e.,* having previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

Petitioner essentially asserts that there is a clear error of law in the judgment because the Government failed to allege in the Indictment, or provide at the plea hearing a factual basis to establish, the "knowledge of status" element as required for conviction.[13]

*Rehaif* was decided more than two years after Petitioner's plea of guilty and approximately twenty months after Petitioner's conviction became final after sentencing. Petitioner claims, with virtually no explanation, that *Rehaif* is retroactively applicable on this Motion. Such claim of retroactivity consistently has been rejected by courts in this circuit, including this Court. *See Dowlen v. United States*, No. 3:16-cv-00676, 2020 WL 489460, at *2 (M.D. Tenn. Jan. 30, 2020) (Trauger, J.) (collecting cases). As noted just two months ago by anther district court in Tennessee, "'[w]hile the Sixth Circuit has not yet addressed' *Rehaif'*s retroactivity, this Court agrees with the district court decisions in this Circuit holding that the ruling in *Rehaif* does not apply retroactively to cases on collateral review." *Wright v. United States*, No. 116CV01080JDBJAY, 2020 WL 718237, at *2 (W.D. Tenn. Feb. 12, 2020) (quoting *Dowlen*, 2020 WL 489460, at *2). The undersigned likewise agrees. And to the extent that Petitioner here purports to make less of a claim based on *Rehaif* alone but rather a freestanding claim of actual innocence based on *Rehaif,* such claim likewise is not cognizable on this collateral attack. *See id.* ("[A] freestanding claim of actual innocence is not cognizable on collateral review.") (quoting *Avery v. United States*, No. 17-5473, 2017 WL 9248941, at *3 (6th Cir. Nov. 13, 2017)); *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (§ 2255 petitioner's "freestanding actual-innocence claim . . . was subject to dismissal as

---

[13] Petitioner also claims, that he in fact "did not know that he belonged to the relevant category of persons barred from possessing a firearm . . . ." (Doc. No. 27 at 10). This is a very unconvincing claim; given his service of almost six (consecutive) years in prison (for only two counts of conviction, *i.e.*, attempted second degree murder and robbery) prior to the firearm possession involved in this case, one wonders how it is that he would not know that he belonged to the category of persons "previously convicted of a crime punishable by imprisonment for a term exceeding one year." But in any event, the Court does not believe that any cognizable *Rehaif* claim would require Petitioner to show that he lacked such knowledge of status, and his *Rehaif* claim here certainly does not fail because he actually had knowledge of status. Instead, the problem with Petitioner's *Rehaif* claim is that it is not cognizable on this collateral attack.

not cognizable"); *United States v. May*, No. 3:16-cr-127, 2019 WL 7169132, at *2 (S.D. Ohio Dec. 22, 2019) (report and recommendation) (freestanding actual innocence claim based on *Rehaif* was non-cognizable in § 2255 proceeding (citing *Herrera v. Collins*, 506 U.S. 390, 408-11 (1993))).

*Rehaif*, and any related freestanding claim of actual innocence, thus afford Petitioner no grounds for relief.

## CONCLUSION

For the reasons stated herein, none of Petitioner's claims have merit or entitle Petitioner to an evidentiary hearing. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, (Doc. No. 1), as supplemented via the Supplemental Brief (Doc. No. 27), will be DENIED, and this action will be DISMISSED.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE